IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| JOYCE WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. CBD-12-2553 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner, Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Joyce White, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and Supplemental Social Security Income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 14) and Commissioner's Motion for Summary Judgment ("Commissioner's Motion") (ECF No. 16). The Court has reviewed these motions and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion and GRANTS Commissioner's Motion.

## PROCEDURAL BACKGROUND

Plaintiff filed for disability benefits on November 12, 2008. R. 184. The Commissioner denied Plaintiff's claim on first review on July 16, 2009, R. 115-21, and on reconsideration on

1

February 12, 2010. R. 128-31. A hearing was held before an Administrative Law Judge ("ALJ") on December 28, 2010. R 61-110. On January 28, 2011, the ALJ issued a written decision concluding that Plaintiff was not disabled under the Social Security Act. R. 24-56.

The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20 C.F.R. §§ 404.1520, 416.920 (2011), and further explained below. At the first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 21, 2007, the alleged onset date. R. 26. At the second step, the ALJ determined that Plaintiff has the following severe impairments: rheumatoid arthritis, depressive disorder, anxiety disorder, and substance abuse (heroin and cocaine) in reported remission. *Id*. The ALJ found that Plaintiff's tendonitis and bursitis of the right shoulder and low back pain were not severe impairments. R. 26-27. At the third step, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals" a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 27. At the fourth step, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that she is further limited to "frequently handling and fingering; occasionally climbing ramps or stairs (never ladders, ropes or scaffolds), balancing, stooping, kneeling; avoiding all exposure to workplace hazards; and performing simple to moderately complex tasks in two-hour increments which can be accommodated by regularly scheduled breaks." R. 29. The ALJ found that Plaintiff is capable of performing her past relevant work as a waitress, receptionist, and cashier. R. 56. Therefore, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from the alleged onset date of July 21, 2007, through the date of the decision. *Id*.

Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council. R. 17. The Appeals Council denied Plaintiff's request on July 24, 2012, making the ALJ's decision final and appealable. R. 1-3.

## **STANDARD OF REVIEW**

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); s*ee also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at 345. The ALJ, not the Court, has the responsibility to make findings of fact and resolve

evidentiary conflicts. *Hays*, 907 F.2d at 1456. If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is deemed legally disabled if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2011). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is doing such activity, she is not disabled.

2) If she is not doing such activity, determine whether she has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If she does not have such impairment or combination of impairments, she is not disabled.

3) If she does have such impairment or combination of impairments, determine whether she has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If she does have such impairment, she is disabled.

4) If she does not, considering her residual functional capacity, determine whether she can do her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If she can do such work, she is not disabled.

5) If she cannot do such work, considering her residual functional capacity, age, education, and work experience, determine whether she can perform other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she can perform other work, she is not disabled, and if she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Defendant has the burden to prove that Plaintiff is not disabled at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## ANALYSIS

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or remand the case for additional consideration and evaluation of Plaintiff's condition for the following four reasons:

1) The ALJ lacked substantial evidence for the mental RFC analysis and failed to properly apply the special technique for the evaluation of mental impairments;

2) The RFC assessment in the hypothetical question posed to the vocational examiner was excessively vague;

3) The ALJ did not properly weigh the opinions of Plaintiff's treating physicians; and

4) The ALJ failed to properly analyze Plaintiff's capability to perform her past relevant work.

For the reasons stated below, the Court rejects Plaintiff's arguments and affirms the ALJ's decision.

**I.     Substantial Evidence Supports The ALJ's Assessment Of Plaintiff's Mental Residual Functional Capacity.**

Plaintiff argues that the ALJ's mental RFC assessment was deficient because it failed to include a detailed "function by function" assessment and was not supported by the medical evidence of record. Pl.'s Br. 32-36. When evaluating a mental impairment, the ALJ is required to follow the special technique set out in 20 C.F.R. §§ 404.1520a, 416.920a (2011), the steps of which track the overall sequential evaluation process. The first step is for the ALJ to evaluate the pertinent signs, symptoms, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The

next step is to determine the degree of functional limitation by rating the claimant in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Next, the ALJ determines the severity of the impairment and whether it meets or equals a listing by comparing the medical evidence and the degree of functional limitation to the criteria for the appropriate mental disorder. 20 C.F.R. §§ 404.1520a(d)(1)-(2), 416.920a(d)(1)-(2). Finally, if the claimant has a severe mental disorder that does not meet or equal a listing, the ALJ must determine the RFC of the claimant. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

The ALJ must document application of the technique by incorporating the pertinent findings and conclusions into the opinion. 20 C.F.R. §§ 404.1520a(e), 416.920a(e). The opinion must "show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). When determining RFC at steps four and five of the sequential evaluation, the ALJ must itemize the "various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments," which are the same four categories listed above: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Social Security Ruling[1] ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The ALJ must express the claimant's capacity in terms of work-related functions, such as the ability to understand, carry out, and remember instructions; use judgment in work-related decisions, respond appropriately to supervision, and deal with changes in a work setting. *Id*. at *6.

---

[1] Although not required by statute, the Commissioner publishes the Social Security Rulings which are binding on all components of the Social Security Administration. They represent precedent, final opinions, and statements of policy which the Commissioner has adopted. 20 C.F.R. § 402.35(b)(1) (2013).

While the regulations and Social Security rulings provide detailed guidance to ALJ's in applying the special technique, the Court must also keep in mind that the burden remains on the claimant in steps one through four of the sequential analysis. *See supra*, Standard of Review. To warrant remand, Plaintiff must demonstrate that any deficiencies in the ALJ's application of the special technique prejudiced the ultimate outcome. *See Stanley v. Comm'r, Soc. Sec. Admin.*, No. SAG-11-671, 2013 WL 2455984, at *1 (D. Md. June 4, 2013) (rejecting a boilerplate argument that the ALJ's function-by-function analysis was inadequate because the plaintiff failed to show how a more detailed analysis would have changed the outcome); *Wilson v. Astrue*, No. SAG-12-313, 2013 WL 709824, at *3 (D. Md. Feb. 26, 2013) (rejecting a similar argument where the plaintiff failed to identify any additional impairment not addressed by the ALJ's analysis). The ALJ's function-by-function analysis will be deemed adequate if it includes a narrative discussion thoroughly explaining how the functional limitations in the four broad categories are supported by the medical and non-medical evidence. *Kozel v. Astrue*, No. JKS-10-2180, 2012 WL 2951554, at *3-4 (D. Md. July 18, 2012) (citing *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011); *Thomason v. Astrue*, No. TMD 08-3403, 2012 WL 707003, at *2 (D. Md. Mar. 2, 2012); *Davis v. Astrue*, No. JKS 09-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 16, 2010).

Plaintiff argues that the ALJ did not comply with the special technique for the evaluation of mental disorders in determining that she retained the mental RFC to perform "simple to moderately complex tasks in two-hour increments which can be accommodated by regularly scheduled breaks." Pl.'s Br. 33; R. 29. However, the ALJ correctly applied the special technique. First, the ALJ determined that Plaintiff had a medically determinable mental impairment at step two of the sequential analysis. R. 26-27. In determining that Plaintiff did not meet a listing at step three, the ALJ rated her functional limitations in the four broad categories.

7

R. 28. The ALJ found mild restrictions in her activities of daily living and social functioning, moderate restrictions in concentration, and one episode of decompensation. *Id*. At step four, the ALJ revisited these findings in more detail by citing to the medical and non-medical evidence supporting her conclusions. While doing so, the ALJ thoroughly discussed the treatment notes and opinions of Plaintiff's treating psychiatrists Dr. Frank Eisenberg and Dr. Del Dressel, the results of her state agency consultative psychiatric exam, and the notes of her psychotherapist Howard Eisenberg. R. 32-34. The ALJ also appropriately considered Plaintiff's own self-reported daily activities in assessing the degree of her limitations. R. 37-38. The ALJ then expressed her mental RFC assessment in terms of work-related functions, namely by limiting the complexity of the tasks Plaintiff can be assigned and the duration of time for which she can be expected to sustain attention. R. 29. The ALJ did not err by failing to mention work-related functions that were not supported by the evidence of record. *See Wilson*, 2013 WL 709824, at *3 ("The regulations do not, however, require an ALJ to discuss a functional area where there is no limitation.").

Plaintiff's suggestion that the ALJ "fail[ed] to cite any acceptable medical source in support" of the mental RFC assessment is without merit. Pl.'s Br. 34. The ALJ's narrative discussion of her RFC findings in the opinion establishes that there was substantial evidence for the degree of mental limitations assigned. The ALJ discussed Plaintiff's own self-reported activities of daily living, which include getting her son up for school, walking him to school, reading and watching television, taking the bus to her drug treatment appointments, cooking, and cleaning. R. 37-38, 206-08. The ALJ discussed extensive medical evidence from the relevant period that Plaintiff's mood and anxiety were either stable or improving, as assessed by her treating psychiatrists, Dr. Dressel and Dr. Eisenberg, and by her therapist Sarita Olson. R. 40,
8

42, 300-01, 329, 334, 336, 436, 439, 441-42, 449, 451-53, 524. Frequently during her treatment, Plaintiff's treating physicians described her thinking as linear and logical. R. 329, 330, 432, 452-3. The ALJ discussed Plaintiff's inconsistent compliance with her psychiatric medications despite evidence that they improved her mood when she took them regularly. R. 45, 339, 347, 448, 453. Plaintiff has no history of hospitalizations or other major episodes of decompensation from her psychiatric condition. R. 306, 354. Further, Plaintiff does not identify any additional limitations in work-related functions supported by the evidence of record. Therefore, there was substantial evidence for the mental RFC assessment reached by the ALJ.

## II. The Hypothetical Question That The ALJ Posed To The Vocational Expert Was Adequate And Not Excessively Vague.

Plaintiff suggests that the hypothetical question that the ALJ posed to the vocational expert was too vague to properly asses her capacity to perform her prior work. Pl.'s Br. 33. The Commissioner employs vocational experts to offer evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c) (2011). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted). The ALJ is afforded substantial leeway in the formulation of hypothetical questions. *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000).

Plaintiff suggests that the ALJ erred by failing to define for the vocational expert what was meant by the functional limitation of "simple to moderately complex tasks." Pl.'s Br. 33. However, the Commissioner points out that Plaintiff did not object to the question being posed in those terms at the hearing and the vocational expert expressed no confusion. Def.'s Br. 12. The vocational expert is highly trained and experienced, and "it is apparent from her testimony that she understood what the ALJ intended to convey." *Wilson v. Astrue*, No. SAG-12-313, 2013 WL 709824, at *3 (D. Md. Feb. 26, 2013); R. 101-06, 172-3. Therefore, there was no error in the manner in which the question was posed to the vocational expert.

Next, Plaintiff argues that the limitation of performing tasks "in two hour increments" should have precluded the ALJ's conclusion that she can perform light work on a regular and continuing basis, defined as eight hours a day for five days per week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). However, working on a regular and continuing basis may allow for a lunch break and two additional breaks, which is consistent with two hour intervals. *See* SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996) (discussing the allowance for breaks when meeting the minimum requirements for sedentary work). Therefore, this argument is also without merit.

### III. The Weight Assigned By The ALJ To The Opinions Of Plaintiff's Treating Physicians Was Appropriate And Supported By Substantial Evidence.

Plaintiff argues that the ALJ erred by failing to afford controlling weight to five of her treating physicians and one nurse practitioner, each of whom submitted medical opinions which if deemed fully credible would compel a finding of disability. R. 38-46. The regulations require the Commissioner to give more weight to the opinions of treating sources, since they are "most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(d),

10

416.927(d) (2011). First, the ALJ is required to give the opinion of a treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in your case record." *Id*. If the ALJ finds that the treating physician's opinion is not entitled to controlling weight, the following factors must be applied to determine its proper weight: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with relevant medical evidence; (4) its consistency with the record as a whole; and (5) whether it is the opinion of a specialist regarding his or her area of specialty. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6) (2011). The Social Security Rulings emphasize that even when a treating source is not entitled to controlling weight it is still entitled to deference and must be weighed using all of the factors. SSR 96-2P, 1996 WL 374188, at *4 (July 2, 1996). A formulaic recitation of the factors is not required so long as it is apparent that the ALJ was aware of and considered each one. *Hooks v. Astrue*, No. 11-423, 2012 WL 2873944, at *8 (D. Md. July 12, 2012); *see also Burch v. Apfel*, 9 F. App'x 255, 259-60 (4th Cir. 2001). In addition, certain determinations are always reserved to the Commissioner because they are administrative findings and are dispositive of the case. 20 C.F.R. §§ 404.1527(e), 416.927(e) (2011). These include an opinion that a claimant is disabled, whether an impairment meets or equals a listing, a claimant's RFC, and the application of vocational factors. *Id*.

Plaintiff relies on a series of medical opinions submitted by her treating physicians and nurse practitioners. The opinions in the record include the following:

> 1) A medical assessment report form dated September 10, 2008, by treating psychiatrist Dr. Frank Eisenberg, indicating that Plaintiff had marked restrictions in activities of daily living, maintaining social functioning, and maintaining

11

concentration, as well as repeated episodes of decompensation. R. 463-66. If credited, this opinion would likely qualify Plaintiff under Listing 12.04 for affective disorders in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2011).

2) A medical assessment report form dated August 24, 2009, by treating psychiatrist Dr. Del Dressel, indicating that if Plaintiff returned to work she would experience a substantial loss of ability to respond appropriately to supervision or deal with changes in the work environment, as well as marked restrictions in social functioning and concentration. R. 467-70. If credited, this opinion would also qualify Plaintiff under Listing 12.04.

3) A medical assessment report form date December 23, 2010, by psychiatric nurse practitioner Janet Passley-Clark, concluding that if Plaintiff returned to work she would experience a substantial loss of ability to respond appropriately to supervision or deal with changes in the work environment, as well as marked restrictions in activities of daily living, social functioning and concentration. R. 537-40. If credited, this opinion would likely qualify Plaintiff under Listing 12.04.

4) A medical assessment report form dated March 18, 2010, by treating physician Dr. Kindra Smith, concluding that Plaintiff could not stand for two hours in an eight hour work day, could not lift ten pounds frequently, and would be expected to miss thirty days per work year due to her condition. R. 471-73. If credited, this opinion would likely preclude competitive employment. *See* R. 105 (vocational expert's testimony).

5) A medical assessment report form dated February 27, 2011, by treating rheumatologist Dr. Ashok Jacob, concluding that Plaintiff could not stand for two hours in an eight hour work day, could not lift ten pounds frequently, and would be expected to miss thirty days per work year due to her condition. R. 279-281. Dr. Jacob also opined that Plaintiff meets Listing 14.09. R. 282-84.

6) A medical assessment report form dated December 16, 2010, by nurse practitioner Margaret McManus and treating physician Dr. Andrea Speedie, concluding that Plaintiff could not stand for two hours in an eight hour work day, could not sit for six hours, could not lift ten pounds frequently, and would be expected to miss thirty days per work year due to

> her condition. R. 533-36. They also found marked
> restrictions in activities of daily living, social functioning, and
> concentration. R. 528. If credited, this opinion would likely
> preclude competitive employment and qualify Plaintiff for
> listing 12.04.

Also in the record is a consultative psychiatric examination conducted by Dr. Varsha Vaidya. R. 347-351. Dr. Vaidya reported that Plaintiff got along well with colleagues and supervisors in the past, felt that her medications had helped a lot, was not depressed or anxious, and had intact intellectual resources. R. 347. She concluded that Plaintiff performed activities of daily living independently and, although her concentration was poor, she could follow simple instructions. R. 349-51. Relying on this evaluation and on the other medical evidence, the non-evaluating non-treating state-agency physician Dr. Boyer concluded that Plaintiff had only mild difficulties in activities of daily living and social functioning, moderate difficulties in concentration, and one to two episodes of decompensation. R. 366-68.

On its face, Plaintiff's argument that her treating physicians should have been assigned greater weight is compelling. It may seem suspect that the ALJ rejected the opinions of several of Plaintiff's treating physicians and instead adopted that of a consultative evaluator who only met her once. However, after thoroughly reviewing the ALJ's opinion and the record it is evident that the ALJ followed the law by carefully applying the factors set forth in 20 C.F.R. § 404.1527(d)(2) and that her conclusions were supported by substantial medical and non-medical evidence. For each treating physician the ALJ analyzed the report in detail, explained the reasons she was assigning little weight, and highlighted the contradictory evidence. R. 49-55.

The ALJ was within her discretion in deciding not to afford controlling weight to the treating physicians because she found that their opinions were insufficiently supported by clinical and laboratory diagnostic techniques and were inconsistent with other record evidence. Either reason is sufficient not to assign controlling weight, but the ALJ relied on both while

citing specific examples in the record. R. 50-55. In affording little weight to the opinions of treating physicians, the ALJ relied largely on Plaintiff's own testimony regarding her daily activities and on those same physicians' treatment notes, which the ALJ found to be inconsistent with limitations assigned in the opinion forms. For each medical opinion, the ALJ proffered a combination of the following reasons for assigning little weight: reliance on subjective symptoms instead of laboratory and clinical testing, "uncritical" acceptance of Plaintiff's subjective symptoms, a short or sporadic treatment history, and the failure to review or reference Plaintiff's other medical records. R. 49-55. The ALJ also cited to specific instances in the record in which the course of treatment was not consistent with a disabling level of limitations, where the physician's treatment notes were inconsistent with the level of disability assigned, or where Plaintiff felt better when complying with medications but did so inconsistently. *Id*. Finally, the ALJ relies on Plaintiff's own self-reported activities which are inconsistent with the degree of limitations suggested by her physicians. *Id*. Each of these considerations was appropriate and complied with 20 C.F.R. § 404.1527(d)(2).

The medical evidence of record demonstrates that the ALJ had substantial evidence to support these conclusions. The treatment notes in the record frequently suggest a higher level of functioning than what was indicated in the medical opinion forms. In Plaintiff's psychiatric treatment, Dr. Eisenberg and the therapist Sarita Olson most commonly rated Plaintiff as stable, showing no signs of suicidal ideation, doing okay or feeling better, having linear and logical thought, and displaying appropriate affect. R. 300-01, 329-30, 336-37. Similarly, Dr. Dressel reported over the course of 2009 that Plaintiff was stable, that "things are working out," that her anxiety was OK, that she was feeling more motivated and doing things around the house, that her medication was working, and that her thoughts were linear and logical. R. 436, 438-39, 441-42,

14

446, 449, 451-53. In April of 2010, he even wrote "No major problems. Good stuff!" in the margins of her treatment notes. R. 524. As to psychiatric nurse practitioner Passley-Clark, the ALJ correctly noted that she was not an acceptable medical source, but nonetheless weighed her opinion according to the applicable factors. *See* SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006) (providing instructions for weighing opinion of medical sources who are not "acceptable medical sources"). Even so, Nurse Passley-Clark qualified her own opinions by stating that Plaintiff "would be able to compensate and respond appropriately if accommodations were made" at work and could adapt to work over time. R. 538.

As to Plaintiff's rheumatoid arthritis, there is similar evidence that the physicians' opinions were not in accordance with her actual limitations. The records only reveal that Dr. Smith saw Plaintiff on one occasion when she had "pulled her back" and was walking slowly with a normal gait, and with no tenderness, numbness, or tingling. R. 485. Dr. Jacob treated Plaintiff consistently for her arthritis, and his notes repeatedly indicate that Plaintiff had full range of motion in her joints and full muscle strength (a five on a five-point scale). R. 289, 386, 388, 396. Further, Dr. Jacob noted that Plaintiff's medication was giving her "significant symptom relief," that she was "doing well," and that she had "begun to see improvement in her joint symptoms." R. 288, 290, 389, 394. Nurse McManus's notes also reveal a normal gait, full range of motion in her joints, and full muscle strength, and suggest that some physical difficulties were caused by a back strain. R. 403, 419, 479, 485.

There is unquestionably also significant evidence in the record suggesting that Plaintiff's mental and physical conditions seriously limit her functioning, which is why the ALJ found her depression and arthritis to be severe impairments. However, the above-cited facts provide substantial evidence for the ALJ's rejection of the extreme level of limitations contained in the

15

treating physicians' opinion forms. The regulations reserve to the Commissioner the ultimate determination of a claimant's residual functional capacity, including the degree of limitation in activities of daily living, social functioning, concentration, sitting, standing, lifting, and expected number of work absences. 20 C.F.R. §§ 404.1527(e), 416.927(e); s*ee Lewis v. Astrue*, No. CBD-10-667, 2013 WL 1820060, at *6 (D. Md. Apr. 29, 2013); *Combs v. Astrue*, No. 4:11CV43, 2012 WL 175028, at *2 (E.D. Va. Jan. 20, 2012). The ALJ is not bound to accept such conclusions as long as she evaluates the medical evidence underlying the physicians' opinions and assigns weight according to the factors listed in 20 C.F.R. § 404.1527(d)(2), which the ALJ did here. *See Battle v. Astrue*, No. 09–3281, 2011 WL 4048525, at *1 (D. Md. Sept. 8, 2011). While reasonable minds might differ as to how to interpret the medical evidence in this case, the Court cannot interfere with the ALJ's role as fact-finder where substantial evidence supports her conclusions.

## IV.     **The ALJ Properly Concluded That Plaintiff Can Perform Her Past Relevant Work.**

Plaintiff argues that the ALJ failed to follow the procedure set forth in the regulations and Social Security Rulings for determining that she was capable of performing her past work. Pl.'s Br. 36-38. At step four of the sequential analysis, the ALJ determines whether the claimant retains the RFC to meet the mental and physical demands of any past relevant work. 20 C.F.R. §§ 404.1560(b), 416.960(b) (2011). The regulations allow the ALJ to "use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor" when making this determination. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). A claimant will be found not disabled if he or she can meet the demands of the past relevant work as it was actually performed by the claimant or as it exists in the natural economy. *Id.*; SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982). A vocational expert may offer relevant evidence

regarding the demands of the past work, and both the ALJ and the expert may rely on the claimant for information in determining its required skill level and level of exertion. *Id*.

When concluding that a claimant retains the RFC to perform past relevant work, an ALJ's opinion must contain the following findings of fact: (1) a finding as to the individual's RFC, (2) a finding as to the physical and mental demands of the past job/occupation, and (3) a finding that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62, 1982 WL 31386, at *4. The ALJ must obtain adequate documentation of the physical and mental demands of the past work, and in cases of mental or emotional impairments must take special care to obtain "a precise description of the particular job duties which are likely to produce tension and anxiety." *Id*. at *3. The ALJ's opinion must contain an adequate explanation of the weight attributed to the pertinent medical and nonmedical factors, reconcile any inconsistencies in the record, and avoid speculation and supposition. *Id*. at *4.

Nonetheless, the ALJ is entitled to rely on the services of a vocational expert in determining the skill level and demands of a claimant's past work. The regulations described above were enacted in 2003 and superseded preexisting law in the Fourth Circuit to the contrary. *See Smith v. Bowen*, 837 F.2d 635, 637 (4th Cir. 1987) (concluding that reliance on a vocational expert was improper at step four of the sequential analysis); *Daniels v. Astrue*, No. 2:06CV00034, 2007 WL 2126395, at *5 n.7 (W.D. Va. July 23, 2007) (acknowledging that *Smith* has been superseded by the subsequent regulations).[2] More recent Fourth Circuit precedent recognizes that it is appropriate for the ALJ to rely on a vocational expert to determine the nature, skill level, and demands of a claimant's past relevant work, and whether a person

---

[2] Plaintiff cites *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), which held that the "practice of delegating to a [vocational expert] many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged." *Id*. at 1025. However, that case preceded the current regulations which affirm the process followed by the ALJ here.

with the claimant's RFC would be capable of performing it. *See Thompson v. Astrue*, 442 F. App'x 804, 807 (4th Cir. 2011). When assessing whether a claimant can perform his or her past work as it exists in the national economy, the ALJ may rely on expert testimony interpreting the exertional categories found in the Dictionary of Occupational Titles as opposed to the demands of the past job as it was actually performed. *Kirkendoll v. Apfel*, No. 97–1147, 1998 WL 539481, at *1 (4th Cir. Aug. 25, 1998); *Brown v. Astrue*, No. TMD 09-1358, 2011 WL 3047635, at *4 (D. Md. July 22, 2011). Alternatively, when assessing a claimant's ability to do past work as it was actually performed, the ALJ and vocational expert may rely on the claimant's testimony and other documentation describing the prior jobs. *See Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995); *Crawley v. Comm'r, Soc. Sec. Admin.*, No. SAG-11-2427, 2013 WL 93202, at *3 (D. Md. Jan. 7, 2013).

The portion of the ALJ's opinion concluding that Plaintiff can perform her past relevant work is brief and mostly relies on the testimony provided by the vocational expert. R. 56. However, the opinion contains the three findings required by Social Security Ruling 82-62. First, it contains a detailed RFC assessment which is supported by substantial evidence. *See supra* Sections I & III; R. 29-55. Second, the ALJ made factual findings as to the demands of Plaintiff's past work by referring to the claimant's hearing testimony, her self-report forms created during the application process, and the vocational expert's testimony. R. 30-31, 65-67, 79, 101-05, 174-83, 187, 218-29. The documentation of the physical and mental demands of Plaintiff's past work in the record was sufficient. *See* R. 218-29.

Third, the ALJ concluded that Plaintiff's RFC would allow her to meet the mental and physical demands of her past work, properly relying on the vocational expert's testimony as discussed above. R. 56. The vocational expert applied the RFC assessment provided by the ALJ

and interpreted the Dictionary of Occupational Titles to conclude that Plaintiff can perform her past work as it exists in the national economy. R. 101-05. The expert discussed the exertional demands, the "SVP" levels (specific vocational preparation, or the amount of time required to train for the position), and additional requirements such as frequency of handling and fingering and allowance for breaks. *Id*. Since the ALJ concluded that Plaintiff can perform her past work as it exists in the national economy, she was entitled to rely on testimony interpreting the Dictionary of Occupational Titles. R. 56; *see Kirkendoll*, 1998 WL 539481, at *1.

Finally, Plaintiff does not identify any specific duties required by her past work that she is unable to perform. As the burden remains on Plaintiff at step four, there is no evidence in the record to suggest that any minor deficiencies in the ALJ's explanation were prejudicial. *Compare Harris v. Sec'y, Dep't of Health & Human Servs.*, No. 88-3113, 1989 WL 7013, at *2 (4th Cir. Jan. 27, 1989) (remanding because ALJ failed to address the plaintiff's inability to climb stairs in determining he could return to work as a security guard); *Williams v. Astrue*, No. SAG-12-0136, 2013 WL 105261, at *1-2 (D. Md. Jan. 8, 2013) (remanding for ALJ's failure to consider the visual requirements of the plaintiff's past work as a daycare aide despite finding that she possessed visual limitations). Therefore, the ALJ did not err in concluding that Plaintiff can perform her past relevant work as it exists in the national economy.

## **CONCLUSION**

Based on the foregoing, the Court DENIES Plaintiff's Motion and GRANTS Commissioner's Motion.

August 6, 2013                                                           /s/
                                                                                         Charles B. Day
                                                                                         United States Magistrate Judge

CBD/ISA